IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES L. BRUNDIDGE, #161856,          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     CIVIL ACTION NO. 2:16-CV-113-WHA
                                      )              (WO)
                                      )
CARTER F. DAVENPORT, et al.,          )
                                      )
          Defendants.                 )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by
James L. Brundidge, a state inmate, challenging actions which occurred during his
incarceration at the Easterling Correctional Facility.  Specifically, Brundidge complains
the defendants acted with deliberate indifference to his safety when they failed to protect
him from an unprovoked and random attack by inmate Atibia McNair on November 21,
2015.  Doc. 1 (Complaint) at 6–8.[2]  Brundidge names Warden Carter Davenport, Capt.
Nathaniel Lawson, Lt. Joseph Dansby and Officer Sharesha Money, correctional officials
employed at Easterling when the challenged actions transpired, as defendants.  Brundidge
seeks a declaratory judgment, injunctive relief and monetary damages for the alleged
violation of his constitutional rights.  Doc. 1 at 5 & 8.

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in
the docketing process.

[2]In the interest of clarity and when not identified in the surrounding text, the court will identify the nature
of a referenced document upon the initial citation of the document.

The defendants filed a special report, supplemental special reports and relevant evidentiary materials in support of their reports — including affidavits, prison reports and medical records — addressing the claims presented by Brundidge.  In these filings, the defendants deny they acted with deliberate indifference to Brundidge's safety.

The court issued an order directing Brundidge to file a response to the arguments set forth by the defendants in their initial report and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials.  Doc. 13 at 2.  This order specifically cautioned the parties that "**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 13 at 3.  Brundidge filed a reply and affidavits from two fellow inmates in response to this order.  Docs. 15, 15-1 & 15-2.  In his reply, Brundidge merely asserts that prisons are inherently "very dangerous" and presents the legal conclusion that the defendants violated his constitutional rights in failing to protect him from the surprise attack by inmate McNair. The affidavits of inmates Willie Carlisle and Jonnell Davis attached to the reply simply

state that inmate McNair attacked Brundidge outside the presence of an officer, Docs. 15-1 & 15-2, a fact which is not disputed by the defendants nor is it dispositive of the deliberate indifference claim pending before this court.   The court likewise provided Brundidge an opportunity to file a response to the defendants' first two supplemental special reports and advised Brundidge to do so in compliance with the directives of the April 19, 2016 order.   Doc. 23.   Brundidge filed a sworn response to these supplemental special reports on August 25, 2016.   Doc. 24.   Subsequently, in accordance with an order of this court, the defendants filed a third supplemental special report.   Doc. 26. Brundidge filed a sworn response to this report, Doc. 27, with a supporting affidavit by inmate Dedrick Wilson in which Wilson simply recounted the facts of the attack against Brundidge, Doc. 27-1.

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.   Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's responses in opposition, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is

no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed.R.Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24.  The moving party discharges his

---

[3]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  **Error! Main Document Only.**Fed.R.Civ.P. 56 Advisory Committee Notes.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public*

*Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).    In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted).   Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is

appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").   Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.   *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists).   At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is

proper.  *Celotex*, 477 U.S. at 323–24.  A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.  *Id.*  To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence which would be admissible at trial the existence of a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Brundidge's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Brundidge has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III.  DISCUSSION

### A.  Absolute Immunity

To the extent Brundidge requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978)
(holding that consent is prohibited by the Alabama Constitution). "Alabama has not
waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."
*Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence,
Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).   In light of the foregoing, the defendants are
entitled to sovereign immunity under the Eleventh Amendment for claims seeking
monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849;
*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state
officials sued in their official capacities are protected under the Eleventh Amendment
from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524
(11th Cir. 1995) (holding that damages are unavailable from a state official sued in his
official capacity).

## B.  Legal Standard — Deliberate Indifference

"A prison official's duty under the Eighth Amendment is to ensure reasonable
safety, a standard that incorporates due regard for prison officials' unenviable task of
keeping dangerous men in safe custody under humane conditions."  *Farmer v. Brennan*,
511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted).   Officials
responsible for prison inmates may be held liable under the Eighth Amendment for acting
with "deliberate indifference" to an inmate's safety when the official knows that the
inmate faces "a substantial risk of serious harm" and with such knowledge disregards the

risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id*. at 834.  "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.' *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)[.]" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'  *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) [*abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)]."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some

allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence

or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual

Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective

knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each

individual Defendant must be judged separately and on the basis of what that person

[knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir.

2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a

mere possibility before a [state official's] failure to act can constitute deliberate

indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and

internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate

from attack does not justify liability under section 1983." *Id.*

Consequently, to proceed beyond the properly supported motion for summary

judgment filed by the defendants, Brundidge must first demonstrate an objectively

substantial risk of serious harm existed to him from inmate McNair and "that the

defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Brundidge must then satisfy the subjective component. To do so, Brundidge "must [show] that the defendant[s] subjectively knew that [he] faced a substantial risk of serious harm [from McNair at the time of the attack]. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id.* at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005).

## C. Relevant Facts[4]

On the night of November 21, 2015, inmate Atibia McNair threw a mixture of boiling water and baby oil on Brundidge causing severe burns to his body. Doc. 1 at 6.

---

[4]The facts are gleaned from the complaint and several statements submitted by Brundidge to the extent these documents contain consistent statements within the personal knowledge of Brundidge and his witnesses. Any inconsistencies in the statements filed by Brundidge are not utilized by the court. The court likewise references relevant facts set forth in the defendants' affidavits which are beyond the personal knowledge of Brundidge or his witnesses and other records compiled contemporaneously with the incident at issue.

This assault occurred in Dorm F2 while Brundidge was in his bunk with his head covered.  Doc. 1 at 6; Doc. 27 (Brundidge's Response) at 1.  McNair also attempted to strike Brundidge with a lock tied to a belt but Brundidge "was able to push him away." Doc. 1 at 6.  As Brundidge ran from his living area towards the cubicle officer, McNair followed attempting unsuccessfully to stab Brundidge with a prison-made knife.  Doc. 1 at 7.  Officer Money, the rover for Dorm F, removed Brundidge from the dorm at which time Brundidge advised her of the attack by McNair.  Doc. 24 (Brundidge's Response) at 1; Doc. 22-4 (Aff. of Sharesha Money).  Officer Money notified Lt. Joseph Danzey, the Shift Commander, of the incident.  Doc. 24 at 1; Doc. 11-1 (Incident Report and Body Chart) at 2; Doc. 11-3 (Aff. of Sharesha Money).

During questioning by Lt. Danzey, "Brundidge stated he and inmate McNair had disagreements in the past but he did not know what provoked this present incident."  Doc. 11-1 at 2.  Brundidge concedes in his response that at the time of the attack he "didn't know why McNair had attacked [him]" because McNair had been counseled and promised "to stop harassing [Brundidge]. . . .  Also it had been a while since that last altercation . . . and myself and McNair had not even spoken since.  So in view of that I didn't know why he had assaulted me on that evening."  Doc. 24 at 4-5.

After interviewing Brundidge, Lt. Danzey escorted him to the health care unit for evaluation.  Brundidge arrived at the health care unit at 11:30 p.m., within approximately five minutes of his first contact with correctional officials.  Doc. 11-1 at 2 & 4.  Nurse

Wendy Walker conducted an examination of Brundidge and noted "open blisters [and] lacerations to [left] temple areas, nose left side and under nose (upper lip) left side. Redness to left neck, closed blisters to [left] cheek area."  Doc. 11-1 at 4.  Upon completion of her examination, Nurse Walker contacted Dr. Jean Darbouze and advised him of the injuries suffered by Brundidge.  Doc. 11-1 at 2.  Dr. Darbouze ordered that Brundidge "be transported to Troy Regional Hospital via ambulance for further medical treatment."  Doc. 11-1 at 2.  A private ambulance arrived at Easterling at approximately 12:44 a.m. to transport Brundidge to the hospital in Troy, Alabama, where he arrived at approximately 1:21 a.m.  Doc. 11-1 at 2-3.  Upon his return to Easterling, Brundidge was placed in the health care unit for observation.  Doc. 11-1 at 3.

### D.  Failure to Protect

To survive the properly supported motion for summary judgment filed by the defendants, Brundidge must first demonstrate an objectively substantial risk of serious harm existed to him from inmate McNair on November 11, 2015 and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner."  *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100; *Marsh*, 268 F.3d at 1028–29.  If he establishes these objective elements, Brundidge must then satisfy the subjective component.  This requires Brundidge to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm [from McNair at the time of the attack].  The defendant must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exist[ed], and [the defendant] must also [have drawn] the inference." *Johnson*, 568 F. App'x at 721 (internal citation omitted); *Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005).

Brundidge alleges the defendants acted with deliberate indifference to his safety with respect to the unprovoked and unforeseen attack perpetrated against him by inmate Atibia McNair on November 21, 2015 on the F2 side of Dorm F.   In support of this assertion, Brundidge contends that due to understaffing no officer was physically present on the F2 side of the dorm at the time of the attack.   Doc. 1 at 6.   The evidentiary materials containing information which would be admissible at trial establish that Officer Money, the officer assigned to provide security for Dorm F, was roving the F1 side of the dorm at the time the incident occurred.   Doc. 22-4 (Aff. of Sharesha Money).[5]   In addition, Brundidge concedes an officer manned the cubicle in Dorm F and does not dispute that additional officers were in the shift office at the time of the attack.   As further support for his claim, Brundidge alleges Officer Money "was very much aware of inmate

---

[5]The sworn statements and affidavits of Brundidge and his inmate witnesses, all of whom were in close proximity to Brundidge's bunk at the time of the attack, demonstrate they could not see Officer Money at this precise time.   Thus, none of these inmates had personal knowledge of Money's position within the facility at the time McNair attacked Brundidge.   Although Brundidge alleges that when he approached the cubicle in Dorm F "COI Money appeared to be horse playing with another officer[,]" Doc. 1 at 7, this purely speculative allegation fails to establish Money's actual behavior at the time of the attack or when initially approached by Brundidge.   Insofar as Brundidge makes different and more definite statements regarding Money's behavior in subsequent affidavits filed for the purpose of opposing summary judgment, the court finds it is appropriate to disregard these statements.   *See Van T. Junkins and Assoc. v. U. S. Industries Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (Under the "sham affidavit" doctrine, when a party gives clear testimony that fails to show the existence of any dispute of material fact, "that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").   Money adamantly denies "'horse playing around'" while on duty and avers that "upon exiting F1-side, I noticed inmate James Brundidge  . . . standing on F2-side trying to get my attention" and allowed him to exit the dorm.   Doc. 22-4.

McNair as she had had to have him excorted (sic) away from her dormitory before for verbal assault on her and communicating threats [to her]." Doc. 24 at 2. In addition, Brundidge alleges he "had made two reports of inmate McNair['s] behavior toward me. I had reported [McNair's] verbal assaults and threats to the [inmate] dorm leaders . . . [and] had also reported his behavior to other officers" sometime well before the attack but these officers did not believe inmate McNair posed a threat to his safety. Doc. 24 at 3. Interestingly, Brundidge acknowledges that he did not at any time complain to the defendants that he was in danger of being attacked by inmate McNair, only that "a while" prior to this incident he expressed concerns about McNair to his inmate dorm leaders and unidentified correctional officials. Moreover, the record is devoid of evidence that Brundidge notified any prison official of a previous incident or credible threat made by inmate McNair from which the official could infer that a substantial risk of harm existed to Brundidge prior to the attack at issue and Brundidge acknowledges the correctional officials he spoke with about McNair did not believe McNair posed a serious risk of harm to him because McNair "was a lot of talk." Doc. 24 at 3. Finally, Brundidge asserts the defendants should have known McNair posed a risk to his safety because McNair "has prior assaults on inmates" and received mental health treatment. Doc. 24 at 3. Brundidge, however, throughout his responses states that at the time of the attack he

knew of no reason why McNair would assault him as their issues had been resolved before the attack.  Doc. 24 at 5.[6]

The defendants deny acting with deliberate indifference to Brundidge's safety. Specifically, the defendants assert they provided adequate security for Dorm F at the time of the attack, i.e., a cubicle officer, dorm rover and supervisors in the shift office.  The defendants next advise that inmate McNair did not have a history of assaultive behavior which provided a basis for them to discern inmate McNair would attack Brundidge or any other inmate.  Doc. 26-1 (Aff. of Nathaniel Lawson) at 1 (McNair has "a previous disciplinary in his file for assault on another inmate back on October 19, 2006, but [he] had not demonstrated any assaultive behavior in my presence to put me on notice[] that [he] would assault inmate James Brundidge [on November 21, 2015].");  Doc. 26-3 (Aff. of Joseph Danzey) at 1 ("I had not observed assaultive behavior from inmate McNair that would lead me to believe inmate McNair would potentially attack anyone.");  Doc. 26-4 (Aff. of Sharesha Money) at 1 ("Based on my working around inmate McNair, he did not have a history of assaultive behavior.").  The defendants further assert that McNair's mental health issues failed to indicate to them any potential risk of harm to Brundidge. *Id*.  Moreover, the defendants aver that Brundidge did not advise them of a specific fear of harm from inmate McNair and, therefore, they had no knowledge that McNair posed any risk of harm to Brundidge during the relevant period of time.  Most importantly,

---

[6]McNair advises he later discovered "that another inmate had pumped inmate McNair up to do it by telling [McNair] that he heard me talking about [McNair] negatively.  [This other inmate] told me he put McNair up to it not knowing McNair would go that far."  Doc. 24 at 5.  However, McNair only obtained this information after the attack.

Brundidge admits that at the time of the attack he and McNair were not experiencing any problems as they had "stay[ed] clear of each other" and "had not even spoken" for lengthy period of time. Doc. 24 at 5.

After a thorough review of the record, the court finds it is devoid of evidence showing "an objectively substantial serious risk of harm" posed by inmate McNair to Brundidge prior to the November 21, 2015 attack as is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028–29. The statements purportedly made by Brundidge to other inmates and unidentified correctional officials well prior to the attack at issue regarding a potential threat of harm from inmate McNair, McNair's assault on another inmate in 2006 nor his receipt of mental health treatment provided an objective basis on which to find that McNair posed a serious risk of harm to Brundidge in November of 2015. Furthermore, even if Brundidge had satisfied the objective component, his deliberate indifference claim nevertheless fails as he has presented no evidence that the defendants were subjectively aware of any serious risk of harm to him posed by inmate McNair at the time of the attack. To the contrary, Brundidge concedes that at that time he and McNair had no issues nor did he have any reason to fear McNair. Doc. 24 at 5.

There is no evidence before the court that the defendants had knowledge of any impending risk of harm, substantial or otherwise, posed by inmate McNair to Brundidge at the time of the challenged attack. Absent a showing that the defendants subjectively

knew McNair posed a substantial risk of serious harm to Brundidge, he is due no relief. *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("[T]he allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by [a fellow inmate].  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate attacker.]"); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life."); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (holding that where Plaintiff did "not identif[y] any specific 'serious threat' from [his inmate assailant,]" mere "fact that [assailant] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'").  In light of the foregoing, summary judgment is due to be granted in favor of the defendants on the claim alleging they acted with deliberate indifference to Brundidge's safety.

### E.  Delay in Conducting Investigation

To the extent the complaint can be construed to challenge the actions of the Investigations and Intelligence Division of the Alabama Department of Corrections in investigating the assault by inmate McNair, this claim is not cognizable in this cause of action.

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985).  "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F.Supp.3d 394, 414 (N.D. N.Y. 2014); *Wilkins v. Illinois Dept. of Corrections*, 2009 WL 1904414, *9 (S.D. Ill. 2009) (recognizing that inmates have no due process right to an investigation); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D. N.Y. 2003) (holding that prisoners do not have a due process right to an investigation of grievances).  Consequently, the alleged failure of the investigative division to promptly conduct an investigation does not rise to the level of a constitutional violation and, therefore, provides Brundidge no basis for relief.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

On or before **June 21, 2018** the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 6th day of June, 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE